UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Brooklyn Larice Poston,** | ) | Civil Action No.: 4:24-cv-7354-JD |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| **Anderson Brothers Bank,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.     This is an action brought by Plaintiff, Brooklyn Larice Poston, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").  Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

2.     The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.     Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect

1

consumers, including § 1681s-2(b) which is one of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

**PARTIES**

9. Plaintiff, Brooklyn Larice Poston, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Anderson Brothers Bank ("ABB") is a South Carolina company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Dean Goewey, 101 N. Main St., Mullins, SC 29574. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

**FACTUAL ALLEGATIONS**

11. On or about July 19, 2019, Defendant Anderson Brothers Bank brought a collection action against Plaintiff. (Hereinafter "Collection Action"). *See Anderson Brothers Bank v. Brooklyn Larice Poston, State of South Carolina, Florence County Case No.: 2019-CP-21-01994*. Thereafter, the parties entered into an agreement which resolved the Collection Action matter, and the Collection Action was dismissed with prejudice on September 10, 2021.

12. On or about February 7, 2022, after the Collection Action was dismissed with prejudice, Plaintiff learned that Defendant was wrongfully reporting the same Anderson Brothers Bank account, account number ending 6144 ("Account"), on his Equifax credit report as a derogatory, charged-off account with a past due balance of $160,224.

13. Between February 15, 2022, and November 22, 2022, in an effort to have the inaccurate Account removed from his Equifax credit report, Plaintiff sent four written

3

disputes to Equifax, wherein he stated the Account had been involved in litigation and was to be deleted from his credit report. Included with his fourth written dispute to Equifax, Plaintiff provided a copy of the dismissal of the Collection Action.

14. Upon receipt of Plaintiff's disputes regarding the Account, Equifax forwarded the disputes to Defendant. In each and every one of Defendant's responses, Defendant verified its reporting of the Account as accurate. As a result, the Account continued to be wrongfully reported as a charged-off account with a balance due of $160,224 on Plaintiff's Equifax credit reports. Additionally, Defendant never noted the account as disputed.

15. On or about June 6, 2023, two years after the Collection Action was dismissed with prejudice based upon the agreement of the parties, Plaintiff filed a lawsuit against Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (Hereinafter "Federal Action"). *See Brooklyn Larice Poston v. Anderson Brothers Bank,* U.S. District Court, Florence Division Civil Action No.: 4:23-cv-02498-RBH.

16. Plaintiff and Defendant reached an Agreement in the Federal Action which resulted in the Account again being properly deleted from Plaintiff's Equifax credit reports. Thereafter, the Federal Action was dismissed with prejudice on October 16, 2023.

17. In July 2024, Plaintiff made the decision to relocate his current business back to Johnsonville and open a new auto repair shop. In order to construct a waiting area next to the repair shop for his customers to use while their vehicles were being serviced, Plaintiff applied for a loan with Lendmark Financial Services in the amount of $10,440.00.

18. On July 31, 2024, Lendmark Financial Services did a hard inquiry of Plaintiff's Equifax credit report and thereafter, denied Plaintiff's application for the loan due to

4

delinquencies being reported on Plaintiff's Equifax credit report.

19. Upon being denied, Plaintiff immediately checked his Equifax credit report and discovered the inaccurate, disputed Account was once again being reported as a charged-off account with a balance of $160,224 that belonged to Plaintiff.

20. Thereafter, Plaintiff also checked his Equifax credit report history on Credit Karma and learned that the Account had been reinserted onto his Equifax credit report sometime prior to April 28, 2024. Then, at some point between April 28, 2024, and May 1, 2024, the Account was removed. Finally, the Account was reinserted back onto Plaintiff's Equifax credit report sometime between May 1, 2024, and May 8, 2024.

21. On or about August 8, 2024, Plaintiff obtained a copy of his Equifax credit report online wherein the Account was reporting as belonging to Plaintiff and as a charged-off account since May 2019, with a past balance due of $160,224.

22. Plaintiff immediately submitted an online dispute with Equifax stating the Account was not his account, that he did not owe any money on the Account and that the Account had been previously removed from his credit report. Upon receipt, Equifax forwarded Plaintiff's online dispute directly to Defendant.

23. Anxious to see if his Equifax credit report had been corrected so he could move forward with the plans for his business, Plaintiff checked Credit Karma on August 14, 2024. At that time, Defendant was still reporting the Account on Plaintiff's Equifax credit report as a charged-off account with 48 missed payments and as currently late.

24. On or about August 15, 2024, Equifax sent Plaintiff its reinvestigation results into his dispute. In these results, Equifax specifically informed Plaintiff that Defendant had

verified the Account as reporting accurately. As a result, Equifax continued to report the Account to Plaintiff's Equifax credit report and also continued to incorrectly report the Account with a charge-off amount of $160,224.

25. Upon receiving Equifax's reinvestigation results into his dispute, Plaintiff submitted a second online dispute of the Account with Equifax. Upon receipt, Equifax forwarded Plaintiff's second online dispute directly to Defendant.

26. On or about August 20, 2024, Plaintiff received Equifax's reinvestigation results for his second online dispute. In these results, Equifax informed Plaintiff that Defendant again verified the Account as belonging to Plaintiff and modified Additional Information and Account History fields. As a result, Equifax continued reporting the inaccurate, disputed Account as belonging to Plaintiff and as a charged-off account with a charge-off amount of $160,224 on Plaintiff's Equifax credit report.

27. On or about September 4, 2024, Plaintiff sent a written dispute letter to Equifax via certified mail wherein he informed Equifax that he had applied for a loan and been denied. Plaintiff also informed Equifax that the Account had been wrongfully added back to his Equifax credit report and was reporting as a charged-off account with 48 missed payments. Plaintiff informed Equifax the Account was not his account and that the Account was previously involved in litigation and by agreement was to be permanently removed from Plaintiff's Equifax credit report. Upon receipt of Plaintiff's written dispute, Equifax forwarded same to Defendant.

28. Upon receipt of Plaintiff's dispute, Defendant wrongfully verified the reporting of the Account as accurate.

29.     Frustrated that the Account continued reporting on his Equifax credit report, Plaintiff did a third online dispute with Equifax on October 8, 2024, wherein Plaintiff disputed the Account as not his account. Upon receipt, Equifax forwarded Plaintiff's third online dispute to Defendant.

30.     On or about October 11, 2024, Equifax sent Plaintiff its reinvestigation results of Plaintiff's October 8, 2024, online dispute. In these results, Equifax notified Plaintiff that Defendant had yet again verified the Account belonged to him and updated the Account.

31.     On or about October 23, 2024, Plaintiff sent a second written dispute letter to Equifax via certified mail. In this second letter, Plaintiff again informed Defendant that he had applied for a loan and it was denied due to the Account being wrongfully added back to his Equifax credit report. Plaintiff also set out his previous online and written disputes with Equifax. Plaintiff disputed the Account as not his account, and informed Equifax the Account was previously involved in litigation and by agreement was not to be reported on his Equifax credit report.

32.     Upon receipt of Plaintiff's October 23, 2024, dispute letter, Equifax sent Plaintiff a notice on October 28, 2024, stating that since Plaintiff had already disputed the Account at least twice within the last 90 days and Defendant had verified that Account as accurate, it would not be researching the new dispute.

33.     At the time Defendant responded to each of the four ACDVs it received from Equifax, it knew that it had previously reached an Agreement with Plaintiff in both the Collection Action and the Federal Action which resulted in the Account being removed from Plaintiff's Equifax credit reports.

34.     To date and in direct violation of the Agreement between the parties, Defendant continues to intentionally and wrongfully report and verify its reporting of the Account to Equifax and the public at large.

35.     Defendant has repeatedly breached the settlement agreements between the Plaintiff and Defendant and failed to abide by the terms of said agreements.

36.     As a result of Defendant's repeated verifications of the Account as belonging to Plaintiff, the Account continued to be reported as belonging to Plaintiff, as a charged-off account, and with a charged-off balance of $160,224 from at least May 1, 2024, through the present.

37.     Despite actual knowledge of all of the foregoing facts and specific reference to the parties' Agreement, Defendant verified the prior false reporting of the Account as true to Equifax and to date, Defendant continues to report inaccurate information regarding the Account on Plaintiff's Equifax credit report and to the public at large.

38.     Since May 1, 2024, Lendmark Financial, Citibank, Citi Cards, Fidelity RIA, Finance MA, Hughes Network Systems, Capital One, Regional Finance, and Progressive Insurance have all viewed Plaintiff's Equifax credit report which contained the inaccurate Account.

39.     Due to Defendant's actions and ongoing breach of the Agreement, Plaintiff has suffered and continues to suffer harm to his credit and personal reputations.  Plaintiff has been denied credit, has suffered loss of sleep, worry, frustration, family discord, anger, physical sickness including headaches, and loss of enjoyment of life for which he seeks damages.

## COUNT ONE
(Fair Credit Reporting Act)

40. The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 11 through 39 hereinbefore as if fully set forth herein.

41. Defendant violated 15 U.S.C. §1681s-2(b) by negligently and/or willfully failing to investigate the accuracy of the information reported by the Defendant to a consumer reporting agency.

42. On at least one occasion within the past two years, by example only and without limitation, Defendant negligently and/or willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

43. On at least one occasion within the past two years, by example only and without limitation, Defendant negligently and/or willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency.

44. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, denial of credit, lost credit opportunities, family discord, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness including headaches, mental anguish, and loss of enjoyment of life.

45. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives

a consumer's FCRA dispute through a consumer reporting agency.

46. The violations by Defendant were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

47. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

48. The Plaintiff adopts the averments and allegations of paragraphs 11 through 47 hereinbefore as if fully set forth herein.

49. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit file with a credit reporting agency by failing to correctly report results of an accurate investigation to the credit reporting agency.

50. Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

51. Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify the consumer reporting agency that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

52. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the

Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, denial of credit, lost credit opportunities, family discord, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness including headaches, mental anguish, and loss of enjoyment of life.

53. The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

54. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
### (Breach of Contract)

55. The Plaintiff adopts the averments and allegations of paragraphs 11 through 54 hereinbefore as if fully set forth herein.

56. An express contract existed between Defendant and Plaintiff when the parties entered into an Agreement to resolve the prior Federal Action.

57. The Agreement has been performed by Plaintiff as required.

58. Defendant has refused to perform without legal excuse.

59. The actions of Defendant constitute a breach of the aforementioned Agreement.

60. As a consequence of Defendant's breach of contract, Plaintiff has suffered injuries that may be recovered by way of a judgment for the recovery of contract damages against Defendant, including attorneys' fees and costs as provided.

## COUNT FOUR
### (Defamation, Libel, and Slander)

61.     The Plaintiff adopts the averments and allegations of paragraphs 11 through 60 hereinbefore as if fully set forth herein.

62.     Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish, and emotional distress.

63.     Said communications were false in that Plaintiff was not indebted to Defendant. Plaintiff did not owe any balance on the Account and was not responsible for any charged-off balance.

64.     Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff. Specifically, Defendant reported the Account to Equifax, one of the national credit reporting agencies, as belonging to Plaintiff so the Account would appear on Plaintiff's Equifax credit reports. Plaintiff's Equifax credit reports were viewed by numerous third parties as set out above and Plaintiff was denied a loan.

65.     Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff had a charged-off Account with Defendant which had 48 missed payments, a charged-off balance of $160,224, and was currently late.

66.     At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

67.     As a result of Defendant's intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large, and was forced to endure credit reporting of the Account in spite of the fact that Plaintiff did not owe Account.

68.     As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to be denied credit, and made to suffer humiliation, anxiety, loss of sleep, anger, frustration, worry, physical sickness, loss of enjoyment of life, family discord, and mental anguish for which he claims compensatory and punitive damages.

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.     Compensatory and punitive damages, where available, and attorneys' fees and costs, where available, for Defendant's violations of South Carolina common law; and

E.    For such other and further relief as the Court may deem just and proper.

>     */s/ Penny Hays Cauley*
>     Penny Hays Cauley, Fed.  ID No.  10323
>     Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

>     */s/ Penny Hays Cauley*
>     Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Anderson Brothers Bank
c/o Dean Goewey - Registered Agent
101 N. Main Street
Mullins, SC 29574